The next case on the call of the docket is agenda number 8, case number 124831, the city of Chicago v. Fraternal Order of Police, Chicago Lodge, number 7. Mr. Hammond, you may proceed. Thank you. May it please the court, my name is Brian Lavin, I represent the appellant, Fraternal Order of Police, Chicago Lodge, number 7. This case is before you because the lower courts' decisions have undermined the collective bargaining process and important public policies embodied in the Illinois public-liberal relationship. Substituting the judgment of the courts for the judgment of the arbitrator, and relieving the city of its duty to bargain with the Lodge over the timeline and method for complying with the arbitration award, as well as its obligation to negotiate over changes to collective bargaining agreements with its section 8.4 document retention policy. Now, I understand the court is familiar with the briefs and the history, but I wanted to go over a couple of key facts that seem to have gotten distorted as this case has proceeded through litigation. And the first set of facts relate to the actual remedy and award issued by arbitrator Lutnow in this case. Now, due to the nature of this case, the arbitrator actually issued three awards. He had his interim award, he had his final award, and he had his clarification award. For the purpose of my argument, I'm going to refer to all of them collectively as the award, because that's how the arbitrator kind of intended to be read. Now, contrary to the lower courts, the arbitrator did not order the immediate destruction of all police misconduct records. He did not order the city to violate the Local Records Act or the Freedom of Information Act, nor did the arbitrator order the city to ignore or bypass the Local Records Commission. Rather, if you look at his award, it will demonstrate that it's a thoughtful balance between the city's obligation under the collective bargaining agreement, under the Illinois Public Labor Relations Act, under the State and Local Records Act, and the Freedom of Information Act. pattern practice investigation in response to the federal government, pursuant to federal statute, requiring the city to hold on to all records while they conduct their investigation. So in his award, it's told the city that this enforcement would not begin on my ward until the Department of Justice was no longer ongoing. So if we turn to the actual remedy awarded, that is what the city is supposed to comply with and what we're seeking to have this court enforce, is number one, what the arbitrator stated was he directed the party to negotiate between themselves a timeline and method to implement the destruction of only the records that come under the umbrella of Section 8.4, but subject to the applicable benchmarks such work they're in, subject to the clauses that relate to litigation and arbitration proceedings, and also subject to any other exceptions contained within that section. He further then ordered the city to create a list, and that list was to be given to the Lodge and detail all records that the city states or believes should not be destroyed and provide the Lodge with the reasons. The third thing he did is he directed the city to provide another list to the Lodge of all records the city believes should not be destroyed because they involve pending or actual threatened litigation. Finally, what the arbitrator stated was he can reserve jurisdiction to resolve issues related to documents that may have already been produced in litigation, as well as resolve disputes between the parties regarding these retention or destruction issues, step forth from 1, 2, and 3. That's the award. That's what is done, and that's why I indicated this is consistent with the Illinois Public Labor Relations Act, because the arbitrator told the party to go back and say, I find Section 8.4 is there to be read, including the exceptions, but I also find that the party is now a timeline and method in order to comply with this award. Nothing in the award precluded the city from proposing the submission of these files to the Local Records Commission as part of that timeline and method to implement the award. Mr. Lavin, is that award encompassed with one document, or is there more than one? The award was actually three documents issued by Arbitrator Ravel. So he issued the interim award, he issued a final award, and he issued a clarification award. But he indicated that he intended all three to be read together. So the interim award is what set out the actual remedy. The final award is what now adopted this limited public policy exception due to the federal government coming in and conducting their pattern of practice investigation upon the Chicago Police Department. The clarification award is what told the parties that the final award, my public policy exception in the final award, was not a forever public policy exception, but rather that would expire when the Department of Justice investigation was no longer ongoing. At the time, the arbitrator didn't know if it was going to take three years, three months, the result of litigation. So he just said, I'm going to wait until the award doesn't get into place until it's no longer ongoing. Once it's no longer ongoing, the parties reverse back to my initial award, and Section 8.4 is there to be read along with the exceptions are there to be read. Is it your position that there is no conflict between Section 8.4 and either the Local Records Act or the State Records Act? Yes, that would be our position. So if they were required to negotiate, the city would have to comply with both of those acts? Well, and I think that's instructive where you look at the Decatur case where it talks about certain acts setting a benchmark or a floor. And looking at the Local Records Act, what happened in this case is relying on that statute just kind of stretched the boundaries of this public policy exception in order to overturn this arbitration award and create a public policy that we submit that was not intended by the Local Records Act or the State Records Act. In fact, the lower courts have said that these statutes indicate that governments are to maintain all records, and that's the public policy set forth by the Act. And our position is no, what those acts say is that governments, when they are destroying records, have to be transparent and have an orderly process. If those laws were designed to say that all records need to be kept, it would have been a very short statute for the legislator to create. But instead, they went through this entire process of identifying that there would be the ability for records to be destroyed and establishing commissions and pointing people and saying who should be on these commissions and make these reviews. If they didn't intend that records to be destroyed, there's no point of having a commission and no point of having them reviewed. So our position, Your Honor, is that you can read the arbitration award, and he did reference the Local Records Act. And part of his decision in particular of significance to him was that the city presented no evidence before the arbitrator that a Section 8.4 destruction item was ever presented to the Local Records Commission, and they were told no. So if they were told no, what happens? Well, this is the hypothetical that apparently got me in trouble with the lower court, and I was not trying to be evasive. I was maybe giving the too-much-of-a-lawyer answer of I would read the decision and see what the commission said in terms of why they denied the record. Because getting to these records, the city is highlighting the worst of the worst in terms of police misconduct records. But these files that are covered in 8.4 cover a whole wide spectrum of records. There's over 50 rule violations that officers can violate that would generate these kind of investigatory records. Some of them are the more serious allegations that are talked about where they assess the force, civil rights violations, or criminal conduct. But you also have uniform violations. You have attendance issues. You have issues involving officers maybe working secondary employment when the rules don't allow them to have a secondary job. You have just general day-to-day employment matters that police officers have, just like any other employee of the state. But for the police department, it all comes under the umbrella of these Section 8.4 documents. So we would submit that when they go to the Records Commission, that the city would be, as part of their presentation, identifying which of these records are records of the severe type of misconduct and which of them are the routine employment matters. And I don't see what type of historical, administrative, fiscal purpose could be compelling upon a commission to keep a record about an officer who didn't have the right number of service stripes on his sleeve when he reported to work after his anniversary. Or an officer that may have had an attendance issue or may have not had a state sticker on his vehicle and they saw it parked in a lot and they conducted an investigation. And it turned out that that was his vehicle and he didn't purchase the city sticker. That record doesn't seem like that needs to be run on forever. But they're all under the appellate court's umbrella now of everything must be kept because the appellate court did the sweeping public policy of mandating the retention of all these records. And we think that's gone beyond the breaking point in order to provide the city with relief it's seeking from the clause that it negotiated and is continuing to negotiate with the lot. But that clause, counsel, would you agree that that clause being read by itself does in fact violate public policy by, the clause being Section 8.4, by basically excluding the local records commission from the process? I do not because I don't read the clause as excluding the local records commission from the process. I read the clause as putting the benchmarks in place and identifying categories of records that are eligible for discussion for when they hit those certain benchmarks subject to all those exceptions. There's nothing in the clause that I read that says the city cannot do what it needs to do to comply with the law and submit it to the local records commission. And I find it curious that the local records commission has been around I believe since the early 1990s, 1991, somewhere according to the statute. We've negotiated with the city this entire time and they haven't brought this up with any of their proposed changes. And you'll see in the record the arbitrator goes through in methodical detail of all the various proposals the city has made to the lodge in negotiations in how to comply with Section 8.4. But from the city side, obviously they didn't see this impediment either because they didn't indicate in the collective bargaining we need to add a clause saying subject to final determination by the local records commission. So they've offered other proposals to us and some were accepted and some of these benchmarks and exceptions were changed at the bargaining table. Others were not and what we think here at the lodge is the driving force behind why the city didn't just go to the local records commission, didn't just submit to the arbitrator's ward and sought for this broad based public policy exclusion is now they know the lodge knows that they haven't been complying with the clause for over 20 years, maybe longer. And now they know the lodge knows that at those bargaining sessions when the lodge withdrew proposals in order to keep the steps full from Section 8.4, the city negotiators on their side of the table knew they weren't complying anyways. So they were getting concessions and give and take in bargaining, knowing all the while in the back pocket that they weren't even complying with 8.4. But now what has changed is there are recommendations out there through the task force report or the Department of Justice for the city to kind of come to the lodge and negotiate a change to Section 8.4. And we think it's particularly instructive that both the United States District Court that's in charge of the consent decree that's been entered between the City of Chicago and the Attorney General as well as the United States Court of Appeals for the Seventh Circuit when presented with this issue both said the collective bargaining agreement obligations remain and it's incumbent upon the city to negotiate with the lodge the changes they need to get to comply with 8.4. So what we feel they're doing is trying to do an end around through the courts to use this court and the lower courts to say we don't have to negotiate over 8.4 when our position is under the Illinois Public Labor Relations Act if changes need to be made to Section 8.4 it needs to be done at the bargaining table. So you would read 8.4 to say that the city is required to submit requests to the local records act commission to see if these papers can be destroyed? Well, what I would read in Section 8.4 is I don't see anything that prohibits the city from submitting to the local records commission in Section 8.4. As a union, I look at the collective bargaining agreement. I don't think I could use that clause to file a grievance because they didn't. I think that would be somebody else's concern if the city didn't comply with their obligations under the local records act or utilize the commission. It wouldn't be something I could read. So that's what I'm just quibbling with the required. But the section says will be destroyed. Correct. Does that not conflict with the local records act? We don't see this in conflict with local records act. If we see it differently, do you think an arbitrator can enforce a contract provision that is in conflict with or violates the law? Well, if it violates a specific statute, we understand there's a public policy exception where if it's well defined and dominant public policy, an arbitrator's decision can be overturned on that basis. But we submit that this arbitrator was extremely mindful of the local records act. He was extremely mindful of FOIA. And that's why he crafted the award he did. And that's why I wanted to highlight at the beginning that his award was not the city needs to light a match and destroy all of these records immediately. His award was for the parties to negotiate a timeline and method to implement section 8.4. And that by doing that, he left it free for the city to come to the lodge and indicate that as part of this timeline and method, the final step would be submission to the local records commission. So we see that being read consistently. I think the arbitrator actually did a lot of careful thought to make sure that he did not contravene public policy. And if you recall, if you look at the record, these public policy arguments were made to the arbitrator. So he was fully aware of them when he was writing a decision. And I believe that he was taking that into consideration in how he crafted this award. Similarly, in how he crafted the award of saying that the city is to provide the lodge with lists. And in those lists, they can list their reasons for why they think that these documents should not be destroyed. And every one of the lists, I think, is theoretical. You can say subject to local records act approval as their reason. Okay, that's the reason they give it to us. Similarly, with the litigation, he said prepare a list. And his entire award, which is why we think it's consistent, even if you do find that there is some sort of public policy here, that it can be read consistently. Because this arbitrator took that into consideration. And what he ordered was for the parties to comply with their obligations under the Illinois Public Labor Relations Act. And comply with the contract as written, as negotiated, subject to the universe of documents that are contained therein. Subject to the exceptions that are contained therein. And negotiate a timeline and method. And then prepare these lists. That's what we're dealing with here. And that's why we think the lower court erred. Both lower courts erred and overstepped by stating that the award is something that it wasn't. And that the award can't be read in conjunction with, even if there are these policy considerations that the lower court found. Which we obviously don't concede that. The last thing I want to just kind of highlight, if it goes to Section 8.4, is that if you look at Section 8.4, and kind of talk about it a little bit, one of the areas that 8.4 carves out of the scope are proceedings before the police board. And I just want to highlight that, because under the collective bargaining agreement, you will see that cases involving separation of a police officer automatically go to the police board. So these concerns that you're hearing about the worst of the worst of these significant offenders, those are police board cases. So I want to show you that the parties throughout this history were negotiating and trying to recognize the city's concerns for the need to have these documents. As well as the lodge's concerns that these records aren't going to be used later on to impact an officer in terms of future discipline, in terms of promotional opportunities, in pursuit of any other terms and conditions of their employment. And as the arbitrator noted in his record, after the first collective bargaining agreement was passed in 1981, there were occasions where the lodge had to go to other arbitrators. It was three times in the 1980s, once in the 1990s, and once as late as 2012, where they pointed out to the arbitrator, hey, we believe the city's using a record they shouldn't be using under Section 8.4 to deny a promotion or to impact an officer's term and condition. And on none of those occasions did the city ever protest those decisions that the Section 8.4 destruction language was there to be read. It was only now that they were now raising this argument 30 years after they stopped complying secretly on their end without telling the lodge that they're not complying. So what we think is that in order to be consistent with the Illinois Public Labor Relations Act, reversing the lower court's decision and enforcing this award will compel the parties to bargain and come to the table and reach an agreement related to documents at issue as well as going forward with Section 8.4. I see my red light is on, so if there's no other questions, thank you. Thank you, Mr. Robin. Mr. Hooper? Good morning. May it please the Court, Justin Hooper for the City of Chicago. The vacatur of the arbitrator's award should be affirmed because that award violated public policy. This Court has recognized that CVA provisions and arbitration awards based on them are unenforceable where they violate well-defined public policy. Here, the Local Records Act, the State Records Act, and FOIA all establish a public policy requiring the proper maintenance of important public records. The Local Records Act specifically prohibits the City from destroying any record without following the procedures of the Act, including first obtaining written approval from the Local Records Commission. It also prohibits the destruction of records of historical, legal, research, or fiscal value. The Local Records Act vests authority, first in the City and then ultimately in the Local Records Commission, to determine which records lack that value and may be destroyed. The Local Records Act even makes it a class 4 felony to destroy records under certain circumstances. The State Records Act similarly regulates the destruction of State records. In that Act, the General Assembly explicitly stated that, public records are the property of the people and they should be maintained for their benefit. In FOIA, the General Assembly likewise declared that If that's the City's position, then why did you negotiate it to start with? Why did you negotiate 8.4? Section 8.4 dates back to 1981, as was mentioned. That predates the Local Records Act. It predates the General Assembly setting forth these policies in the statute. And by 1991, the City stopped destroying records, as it became clear to the City that these records were, in fact, legally important, historically important, and fiscally important. Courts began to order the City to stop destroying the records, to maintain them. And the City did. And from that point forward, the City, at the bargaining table, attempted to change Section 8.4 to get it out of the contract. But once a provision is in a CBA, it requires both sides to agree to its removal. And that has not occurred during the course of the bargain. Counsel, you're saying before 19, whatever that was, 1991, the City did destroy records? That's correct. Up until 1991, the City was destroying records pursuant to Section 8.4. But in the beginning of 1991, as the City began to receive these orders and federal litigation, and federal litigation against the City began to snowball, the City stopped destroying records. Well, in 91, did you completely stop destroying all records? My understanding is the City has not destroyed records pursuant to Section 8.4 since that time. Since 91, did the City submit any records for review? So there's been no attempt to? No, Your Honor. Well, in terms of defining the public policy, and maybe I've got this wrong, but under the Local Records Act, the Illinois Local Records Act, Section 8 does contemplate the destruction of records within four years, unless certain exemptions apply. Am I reading that right? Well, Section 8 does, Your Honor, but Section – I'm talking – yeah, okay, go ahead. But Section 7 leaves the authority, ultimately, to the Local Records Commission to determine whether those records should be destroyed, whether they lack historic or legal or research value, or if they have that value, they should be maintained. And ultimately, that is left to the Local Records Commission to determine. After the City has first made a determination that those records lack that value and have submitted them to the Local Records Commission for that reason. And that's why here the arbitrator's award violates public policy, because by requiring automatic destruction of all of these files, it complies with none of the requirements of the Local Records Act. Rather, it requires automatic destruction of all CR files after a set time without any allowance for the Local Records Commission's exercise of authority, and it requires automatic destruction of those files without regard to the Local Records Act's concerns for administrative, legal, research, or historical value of those records. Mr. Hufford, following up on Justice Kilbride's question, after 1991, did the City submit to the Local Records Commission any documents to be destroyed? No. No documents have been submitted for destruction since 1991. The City simply stopped because it wanted to ensure, first, that it was complying with those federal court orders that it received in litigation to make sure it wasn't destroying any records. And after that time, my understanding is that it never again began. But you could have. We could have. Well, the problem was that even though those initial orders expired, that over time this was the testimony at the arbitration hearing from all department officials, was that essentially this policy and practice litigation in federal courts continued, there would be new cases and there would be new orders. And although not all those orders required maintenance, all the documents did require maintenance of some, and the City never knew exactly what might be needed for the next case and what might not. And that continues until today. But it didn't prohibit you from doing it. The City just decided not to because there might be more litigation. That's correct, Your Honor. Again, the City recognized that there was legal and fiscal value to the City from these documents. These documents were relevant in litigation, both to the plaintiffs bringing the claims, but also to the City's defense of these multimillion-dollar claims that the City had these policies of not properly disciplining officers. And the only way for either side to engage in discovery and determine whether that was true or false for the City or for the plaintiffs was to have these records to be able to use in the litigation. I would like to address a couple points. One, this idea that the arbitrator ordered the City to negotiate. Well, that is true. But what the arbitrator ordered the City to negotiate in the end was the timeline and the methods for complying with destruction as required under Section 8.4. And, again, Section 8.4 requires this automatic destruction of these records past a certain date. With the negotiation as to the methods, couldn't one of the methods have been to submit these records to the Local Records Commission? Well, respectfully, Your Honor, that raises two problems, which, again, highlight why this violates public policy. The first is that submission is not enough. We also have to get approval. And if we don't get approval, if the Local Records Commission denies our ability to destroy them, the arbitrator's award and the CBA make no allowance for that. So the City is still left with its obligation under the award and under Section 8.4 to destroy the records regardless. In fact, in the appellate court, the FOP took the position that if that were to occur, that the City sought to be allowed to destroy the records and it was denied, that the City would have to challenge that denial. I don't know how, but that's what FOP said. Or that FOP would intervene somehow in litigation to seek to have the records destroyed despite what the Local Records Commission had decided. So that's the first problem. And then the second problem with attempting to lead in the statute somehow in Section 8.4 of the award is that the City has made a determination after 1991 and going forward that these records do, in fact, have legal, historical, and fiscal value to the City, and therefore there's no person at the City who could any longer in good faith certify to the Local Records Commission that these documents lack that value and should be destroyed in compliance with the app. And just on that point, I'd like to address a point that came up in the reply brief before this court in which the FOP suggested that the City, because it had maintained destruction or retention policies for these files, that the City must somehow, at some point in the past, obtain approval from the Local Records Commission to destroy these documents. And the first thing I'd like to say about that is that the appellate court here clearly held that the arbitration award ignored the requirements of the Local Records Act and obviated the Local Records Commission's authority to determine what records should be destroyed or maintained. And yet in FOP's petition for a leave to appeal, it did not identify any supposed prior Local Records Commission approval as a basis to overturn that holding, and so therefore that issue is not jurisdictionally before the court. But regardless, that argument misunderstands the applicable law and regulations here. The Local Records Act expressly requires the Local Records Commission's written approval before any destruction takes place, and it directs the Local Records Commission to issue binding regulations to govern how that destruction occurs, and we would ask this court to take judicial notice of section 4500.40 of the rules of the Cook County Local Records Commission, which require that the City submit a certificate of disposal for any planned destruction of any record at least 30 days before the planned destruction, and specifically prohibits the City from destroying any record until the Local Records Commission has reviewed and approved that certificate. And despite what the City may have done more than 30 years ago in destroying some records pursuant to section 8.4, again, the City cannot today, in good faith, certify to the Local Records Commission that these records lack historical, legal, or fiscal value as required by the Local Records Act. If I understand the FOP's argument is that the arbitration award, the way it was written allowing for negotiation and including the opportunity of the Local Records Commission to weigh in, that that doesn't violate the law. Is it your position that section 8.4 is in direct conflict with the various acts that you've cited, and therefore no arbitrator's award can be based on that? Absolutely, Your Honor. Section 8.4, as written, makes no allowance for either the Local Records Commission's statutory authority to make this determination or the City's ability to determine whether these documents have value. And for that reason, section 8.4, on its face, violates the Local Records Act and the public policy. And for that reason, because it violates public policy, it is simply unenforceable under this Court's precedent. But, Counsel, doesn't the arbitrator's award contemplate that 8.4, pursuant to negotiations, might be modified? Well, the award does not specifically mention the modification of section 8.4. No, but it talks about sitting down and negotiating a timetable, a list of documents, and so forth. Right. Is that not right? That's correct, but all within the context of the enforcement of section 8.4. It doesn't actually direct the City or the parties to negotiate the modification of it. It directs the City and the parties to negotiate the timeline and methods for the City's compliance with section 8.4, which again requires the automatic destruction of these records at the first set time. Let me ask you this other follow-up. If you went through this process, including submitting information to the Local Public Records Act, in terms of the federal courts, could you not then go to the federal court judge and say, here's what we're proposing to do and get a modification of a consent decree or any injunction that might be in place? Well, again, Your Honor, right now there is no consent decree barring destruction, just to be clear, and the City has. The 1991 order that required us not to destroy all records has expired. Again, there are individual cases that have more limited orders. So we're not relying on those judicial orders at this time. We're relying on the policies set forth by the Local Records Act and the fact that section 8.4 does not comply with it as the basis for the public policy that's at issue. So you're saying that there's no federal order in place that prevents you from doing this? There's no federal order that I'm aware of that across the board prevents us from doing it. There may be orders in place in individual cases regarding the records that are relevant to the claims in those cases, but there's no blanket order at this time preventing us from doing it. That is correct. Well, that would be an individual case involving Officer A, Officer B, and his or her records. Is that right? Well, that is true, Your Honor, but often in these cases, and you'll see, and in the record testimony from the law department officials who testified in the arbitration hearing, what's explained is that in addition to those individual liability claims in these cases, what is often brought, and almost always now brought, is a claim against the city itself, which asserts that the city has some policy or practice of failing to properly identify officer misconduct, and that policy or practice led to the underlying constitutional violations of individual officers. So the plaintiffs seek to hold the city responsible based on a wider policy and practice, which could have a much wider-ranging time and scope as far as the officers and the misconduct that the plaintiffs seek discovery of in order to prove those policy and practice. And the final point that I'd like to make, just to address FOP's arguments about the Public Labor Relations Act, those arguments misapprehend the public policy doctrine. If this Court accepts FOP's reading of the Public Labor Relations Act, it would swallow the public policy doctrine whole, because no matter how offensive to public policy a CBA provision or arbitrator's award may be, it would have to be enforced, regardless of whether it violated public policy. That flies in the face of this Court's decision in AFSCME, striking down an arbitrator's decision pursuant to a CBA provision governing the terms and condition of employment because it violated public policy. Counsel, you say there's a strong public policy, and your argument is specifically related to this Local Records Act. But basically what you're saying is you don't want to go back to the Local Records Commission because the city has made a unilateral decision that these records should not be destroyed, that these records must be preserved at all costs in violation of the arbitrator's award and Section 8.4. I mean, we do have a strong public policy in favor of the finality of arbitrator's awards, correct? That's true, Your Honor. Okay, so if the arbitrator's award can be read in concert with the Local Records Act, why shouldn't the arbitrator's award be affirmed? Again, Your Honor, the problem with attempting to read it in concert with the Local Records Act is twofold. One, that the award as written and the provision as written underlying it make no allowance for the exercise of the Local Records Commission's authority. Right, but you're saying you don't want to send it back to the Local Records Commission. You're saying you've made this decision. These records must be preserved at all costs. You don't even want to send them there. So, I mean, I'm just trying to figure out what your strong public policy is related to the Local Records Act. So the Local Records Act also requires the city as a first step to identify records that lack historical, legal, or research value and then to send that list to the Local Records Commission. That's the first step under the statute. The statute actually tells the city to do that. Then the statute says the Local Records Commission shall determine ultimately whether or not those records that have been identified by the government agency lack that value and may be destroyed. So the act speaks both to the city's initial authority and requires the city, in fact, to make that initial determination before sending it to the Local Records Commission. So that's one part of why this is problematic. And the second part is that if the Local Records Commission then determines from its own exercise of authority that these records do, in fact, have value and should be kept, there's no way to reconcile that with this provision or this order, which requires destruction nonetheless and don't allot for that decision. Following up on Justice Burke's question, it seems to me either we don't need the Local Records Commission if no one's going to send any documents there, or the entity that sends the records to the Local Records Commission and the commission makes a decision, that seems to be a check and balance system, which probably is a good thing to have checks and balances instead of having somebody just not send anything to commission. Well, I believe, Your Honor, when looking at the Local Records Act, the State Records Act, as a whole, what you see is that the General Assembly made an express decision here in the statute recognizing that records of value, public records of value, should be maintained. That's the underlying assumption by the General Assembly in these acts. And therefore, once it says to the local government, if you decide on your own that these records aren't of value, then you may destroy them following these procedures. But we're not going to entrust it to you alone to make that determination. We are going to have a check on that. And that is the Local Records Commission. Ultimately, the Local Records Commission has the authority to ensure that these documents, that you were saying, lack this value that the General Assembly recognizes, should be kept otherwise, that they do lack that value. And if the Local Records Commission disagrees, the Local Records Commission can deny the request to destroy the record. If there are further questions, I'm happy to answer them. But otherwise, the city would respectfully ask that this court affirm the vacancy of the arbitrators' board. Thank you, Mr. Hickert. Mr. Lavin? Thank you, Your Honor. There's just three points that I just kind of wish to stress here. And I think it's highlighted by the argument you just heard and why we believe the lower courts were in error. In relying on the Local Records Act, both those decisions are based on the assumption of what the Local Records Commission would or would not do. And the assumption that both the Circuit Court and the Appellate Court has just presumed is that they would not destroy any of these records. And it was hearing from the argument, we don't know what the Local Records Commission would do or would not do on each of these files as they come before them, because the city stopped sending them to them, or actually never sent them to them, if the timeline is correct, for review and analysis. So for the lower courts to rely on their belief of what that entity would do, it's now the lower court that has actually taken away that commission's authority to make this determination of whether or not these records have the type of value that needs to be retained, or if they no longer possess historical, fiscal, or administrative value and can be destroyed. And what we're saying is by putting the arbitrator's award back in place, it restores the balance that was intended by these statutes and by the arbitrator's award to the city's other point about how the city is the initial gatekeeper going forward. It's the largest position that in negotiations the city has agreed within the collective bargaining agreement that these type of records are records that can be submitted for review. And so they have agreed in the collective bargaining agreement that once these, in the scope that's defined under 8.4, once those benchmarks are achieved and once those other exceptions apply, then these records no longer have the type of administrative, historical, or value that would warrant their retention. So they are now in negotiations, have agreed to that first step for these particular records. So for them to unilaterally stop sending them to the commission is a violation of the collective bargaining agreement and their agreement with the lodge. So when I was answering, and I think when you referenced our appellate court brief, in terms of we would look for an award ordering the city to present these records and urge for their destruction, that's because that's what they agreed to in Section 8.4. So depending on how the commission ruled, if the commission did a ruling and indicated that the city conceded that these records should not be destroyed, then we would think that they're not living up to their end of the collective bargaining agreement if they met all the benchmarks set forth in the agreement. But if the commission rules notwithstanding the city's argument and request for destruction, we rule they must be maintained, then our analysis would look under the Administrative Review Act and look to see as a commission, is this a decision as a commission on the state under which review, we could then have that decision reviewed. I don't see why we couldn't under the Administrative Review Act have it reviewed. But again, we're talking what-ifs. And public policy to overturn an arbitration award needs to be well-defined and dominant, not based on general considerations or assumptions, particularly erroneous assumptions. You know, that we don't know what would happen, and the court just automatically said the commission would never destroy these. Dealing with our other argument that they raised about the, in our reply brief, the city, by way of ordinance, has a file retention destruction policy. And one aspect of it, and this was presented in the record below to the arbitrator, mirrors word-for-word Section 8.4 in terms of the type of records and the timeline for destruction. So our position to the arbitrator was, you know, we would think that the city would not be passing an ordinance, and we're not talking about an ordinance passed back in 1990 before the Local Records Act was created. We're talking about an ordinance that was passed right before we went to arbitration. So where our position to the arbitrator was, the city wouldn't have passed an ordinance that was in violation of the Local Records Act. So they must have, we thought they must have got approval. Apparently they didn't. But they did pass an ordinance saying these records are subject to destruction. It mirrors Section 8.4. So there, in that point, again, they've done the first step of saying these records don't have the type of fiscal, administrative, or historical value that needs to be retained and should be presented to the Local Records Commission. The final thing I just want to touch on is the argument about the federal courts and litigation. And if counsel is correct, there is no federal court sweeping order in place that mandates the retention of any of these records. What you have are a series of lawsuits. And in the record below, the law division witness presented by the city conceded that even in the now claims, the universe is finite. It pertains to a particular officer or group of officers or a particular type of allegation. So each of those claims would be retained under the language of Section 8.4 until that litigation is fully adjudicated. And then if there's no other exception or benchmarks, then they'd be eligible for destruction. But in terms of monitoring it, what the city did was essentially say, this is too much work, too much effort, we're going to keep everything. And we hope the union never finds out. And fortunately, during an arbitration hearing in 2012, they had a witness on the stand who, under oath, testified that she was ordered by her commanders to stop destroying all records. And that's how we found out that there was this policy dictated from above, mandated ceasing compliance with Section 8.4. And so it can be reconciled. And the parties understood that the fact that the city in 2020 now thinks it needs more leeway or more latitude under Section 8.4 than it did in previous versions of Section 8.4 is a subject for the bargaining table. And that's what we're asking. By upholding this arbitration award, by reversing the workforce decision, we will place the parties in their rightful place of negotiating the compliance with this arbitration award, by creating the timeline and method, by the city creating the list and presenting their reasons for why certain documents need to be retained, as well as in the current negotiations for the successor collective bargaining agreement, the city will come to the bargaining table and negotiate whatever changes it seeks to be made collectively with the union to Section 8.4. Unless there's any other questions. Yes, Mr. Lavin. Yes. In your briefs, you relied heavily upon Section 15 of the Labor Relations Act. Yes. Didn't our one case, Enright Pension Reform Litigation, 2015, strike down the statute Section 15 is in in its entirety? I don't believe it struck the entire section. At least that's not how I read that, striking that down. What we read it is consistent with, of course, previous decisions that if it's statutes or statutes or laws that relate to terms and conditions of employment, then those statutes must defer to the Public Labor Relations Act, and we think that's fully compliant here as well, that we're not dealing with these other cases where you're dealing with individual misconduct, disciplinary cases where people are being put back to work after the intoxicated school bus driver or the other examples of people engaging in criminal behavior and public policy for not putting that person back into that position of trust, the person working with the children in the child care facility. Those were dealing with terms and conditions of employment. This is dealing with how police officers' discipline, promotional opportunities, and terms and conditions are going to be impacted by what records the cities can use and rely upon, and as the city has proven, the only way to ensure that something doesn't stay with a police officer for their entire career is after a certain amount of time that was agreed to by the parties, those records will be destroyed. Thank you. Any questions? Thank you, Mr. Chairman. Case number 124831 is taken, City of Chicago v. Internal Order of the Police. It was taken under advisement as agenda number eight. Thank you, Mr. Cooper and Mr. Lavin, for your arguments.